*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. M. MCKINNEY, Minor.

UNPUBLISHED
April 16, 2025
2:47 PM

No. 372644
Wayne Circuit Court
Family Division
LC No. 2020-000706-NA

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Respondent-mother appeals by right the order terminating her parental rights to her minor child, BMM, pursuant to MCL 712A.19b(3)(b)(*i*) (parent caused physical injury); (g) (failure to provide proper care or custody); (j) (reasonable likelihood of harm if returned to parent's home); (k)(*iii*) (parent abused child or sibling by battering, torture, or other severe physical abuse); (k)(*iv*) (parent's abuse of child or sibling caused loss or serious impairment of an organ or limb); and (k)(*v*) (parent's abuse of child or sibling caused life-threatening injury).[1]  We affirm.

## I. BACKGROUND

In February 2024, petitioner, the Department of Health and Human Services, filed a petition to remove BMM from respondent-mother's care.  Petitioner alleged that respondent-mother had six prior complaints with Children's Protective Services ("CPS"), beginning in April 2019, and two of the complaints were substantiated.  Petitioner also alleged that three of respondent-mother's other children, KHL, KSL, and CLTC, were removed from her care in July 2020, after CLTC suffered multiple physical injuries.[2]  Respondent-mother was offered a treatment

---

[1] BMM's father was a respondent and named in the petition; however, his permanency plan was reunification, and he is not a participant in this appeal.

[2] KHL, KSL, and CLTC each have different fathers, none of whom are the same as BMM's father.

plan to address concerns of physical abuse and improper supervision.[3]  Respondent-mother's parental rights to KHL and KSL were terminated in September 2023; CLTC was released to his father, who was granted full physical and legal custody.  Petitioner alleged that respondent-mother did not rectify the "conditions that led to the prior termination[s]" and was unable "to provide adequate food, clothing, shelter, or medical care."

The trial court authorized the petition and removed BMM from respondent-mother's care. BMM was placed with AB, a friend of respondent-mother, and respondent-mother was allowed to have supervised parenting time.  In June 2024, respondent-mother entered a plea of admission regarding the facts establishing jurisdiction and statutory grounds.  On the basis of this plea, the trial court found by a preponderance of evidence that there were statutory grounds to exercise jurisdiction over BMM pursuant to MCL 712A.2(b), and the trial court found by clear and convincing evidence that there were grounds to terminate respondent-mother's parental rights pursuant to MCL 712A.19b(3)(b)(*i*); (g); (j); (k)(*iii*); (k)(*iv*); and (k)(*v*).

At the best-interests hearing, the CPS caseworker testified that BMM was doing well and having her needs met in her "fictive kin" placement.  The caseworker testified that respondent-mother's supervised parenting time, which occurred at least once per week, was going well and that there was a shared bond with BMM.  Nevertheless, the caseworker opined that termination was in BMM's best interests because of the prior terminations, lack of housing and employment, respondent-mother's untreated mental health issues surrounding her "unspecified psychosis," and an incident in which respondent-mother threatened to "snap" BMM's neck.  The caseworker testified that respondent-mother received services before the petition was filed for BMM, including parenting classes and therapy.  Respondent-mother testified that she loved BMM and requested additional services and additional time for reunification.

The trial court acknowledged respondent-mother's bond with BMM, her consistent attendance at parenting time, and BMM's fictive kin placement.  However, the trial court was alarmed by respondent-mother's failure to put herself in a position to care for BMM despite all of the time and opportunities she had throughout her various interactions with CPS.  The trial court also was concerned by respondent-mother's untreated mental health problems, believing that this heightened the risk that BMM would be subjected to an unsafe environment.  The trial court, citing BMM's need for stability and permanence, found by a preponderance of evidence that it was in BMM's best interests to terminate respondent-mother's parental rights.

II.  ANALYSIS

Respondent-mother argues that the trial court erred by finding that it was in BMM's best interests to terminate her parental rights.  We disagree.

"We review for clear error a trial court's factual finding that termination of a parent's parental rights is in the child's best interests."  *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).  "A finding of fact is clearly erroneous if the reviewing court has a definite and firm

---

[3] Respondent-mother's fifth child, "Baby Doe," who has the same father as BMM, was surrendered under Michigan's Safe Delivery of Newborns Law, MCL 712.1 *et seq*.

conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted).

If the trial court finds that a statutory ground for termination of parental rights has been established, it must order termination of parental rights only if it finds that doing so is in the best interests of the child. MCL 712A.19b(5); *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When making this finding, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted). "[B]ecause a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Id*. at 43 (quotation marks and citation omitted). Other factors that the trial court can consider include the parent's compliance with the service plan and the parent's visitation history. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).

The trial court did not clearly err by finding that termination of respondent-mother's parental rights was in BMM's best interests. On appeal, respondent-mother asserts the trial court did not adequately weigh the undisputed evidence showing that she shared a bond with BMM, regularly exercised her parenting time, and acted appropriately during parenting time. However, the parent-child bond and parenting time attendance are only two of several factors that the trial court considered. In addition to the evidence establishing BMM's bond to respondent-mother, the trial court was presented evidence demonstrating a continuing inability to effectively parent. For example, respondent-mother left her stable housing voluntarily to "live with another man" and as a result, was left without a suitable home. There also was evidence of an incident during which respondent-mother broke a window during an argument with BMM's father when BMM was inside the home. Regarding BMM's need for permanency, stability, and finality, the trial court stated respondent-mother was "not prepared on today's date to plan for the child," specifically mentioning the lengthy CPS history that respondent-mother had with respect to her other children that never resulted in improvement.

Further, the trial court was presented with evidence establishing that respondent-mother had untreated mental health needs. At the best-interests hearing, the CPS worker testified that respondent-mother was diagnosed with an unspecified form of psychosis. However, respondent-mother was not taking prescribed medications or receiving counseling services. On one occasion, respondent-mother threatened BMM, stating that she would "snap" her neck, and police officers needed to physically remove BMM from respondent-mother. The caseworker believed that respondent-mother remained an ongoing risk to BMM's safety. Regarding the threat, respondent-mother admitted that it "wasn't the right thing to say" but insisted that she "would never harm" BMM. The trial court stated that respondent-mother's lack of recognition and treatment of her mental health needs "affect[s] her ability to parent properly and safely and increases the risk of [BMM] being subjected to an unstable and unhealthy environment."

The trial court also properly applied the doctrine of anticipatory neglect to find that it was in BMM's best interests to terminate respondent-mother's parental rights. "[T]he doctrine of anticipatory neglect allows an inference that a parent's treatment of one child is probative of how

that parent may treat other children. However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (citation omitted). There was evidence presented that KSL, KHL, and CLTC were removed from respondent-mother's care after CLTC sustained multiple serious physical injuries in 2020. Respondent-mother's parental rights were terminated as to KHL and KSL in 2023. CLTC was released to his father, who obtained full legal and physical custody in 2022. At the best-interests hearing, the trial court considered BMM individually. The trial court, however, noted that it "can look at how you treat one child and . . . determine . . . that may be probative of how you may treat another child." The trial court found respondent-mother's inability to treat "mental health needs" was one example indicating her "behaviors are unlikely to change." As a result, there was an increased risk of BMM "being subjected to an unstable and unhealthy environment." The trial court also emphasized that respondent-mother did not have the ability to parent based, in part, on how she "treated her other children." The trial court's finding that BMM was at risk was not mere speculation, considering that respondent-mother threatened physical abuse to BMM on one occasion and broke a window when BMM was present on another occasion.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young

-4-